IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 19–cv–02354–KMT

BRIAN HALIK,

      Plaintiff,

v.

STEVEN D. BROWN, Sergeant, El Paso County Sheriff's Office, individually and in his official
capacity,
JOSEPH CAREY, Deputy, El Paso County Sheriff's Office, individually and in his official
capacity,
JOHN P. DAVID, Commander, El Paso County Sheriff's Office, individually and in his official
capacity,
BILL ELDER, Sheriff, El Paso County Sheriff's Office, in his official capacity, and
EL PASO COUNTY,

      Defendants.

---

# ORDER

---

Before the court is "Defendants' Motion to Dismiss Complaint (ECF No. 1) Pursuant to
Fed. R. Civ. P. 12(b)(1), 12(b)(4), 12(b)(5) and 12(b)(6)."  (["Motion"], Doc. No. 11.)  Plaintiff
has responded in opposition to the Motion, and Defendants have replied.  (["Response"], Doc.
No. 21; ["Reply"], Doc. No. 25.)  For the following reasons, the Motion is GRANTED, in part,
and DENIED, in part.

## STATEMENT OF THE CASE

*Pro se* Plaintiff Brian Halik brings this lawsuit, pursuant to 42 U.S.C. § 1983, asserting

violations of his constitutional rights by El Paso County; the El Paso County Sheriff, Bill Elder;

and three El Paso County Sheriff's Office ["EPSO"] employees—Commander John P. David, Sergeant Steven D. Brown, and Deputy Joseph Carey.  (["Complaint"], Doc. No. 1 at 1, 9.)

According to the Complaint, on August 19, 2017, an EPSO deputy[1] "initiated a traffic stop on Plaintiff's motorcycle for proceeding past a stop sign without stopping."  (*Id.* at ¶¶ 2, 10.) When Halik "did not pull over," the EPSO deputy notified emergency radio dispatchers that he was in pursuit of the motorcycle for "run[ning] a stop sign and [] not stopping."  (*Id.* at ¶¶ 2, 10-11.)  Sergeant Brown, who "overheard [the EPSO deputy] on his police radio," reportedly "drove to the anticipated direction of the pursuit," and together with "another" EPSO officer, "set up a roadblock across the westbound lanes of traffic on Platte Ave[nue] at its intersection with Wooten R[oad]."  (*Id.* at ¶¶ 12-13.)  According to the Complaint, as Plaintiff traveled westbound towards the roadblock, Sergeant Brown "drove his EPSO Chevrolet Tahoe eastbound against oncoming traffic," and "approached Plaintiff head on."  (*Id.* at ¶ 14.)  Sergeant Brown reportedly "stopped just short" of Plaintiff's motorcycle, "narrowly avoiding a head-on collision."  (*Id.*)

According to Plaintiff, as the pursuit continued, Sergeant Brown tried "to intercept" his motorcycle "in another head-on encounter" by, once again, "driving against oncoming lanes of traffic."  (*Id.* at ¶¶ 15-16.)  Plaintiff claims that he "attempted to avoid" Sergeant Brown's vehicle "by turning to the left."  (*Id.* at ¶ 17.)  Sergeant Brown, however, reportedly "turned his [vehicle] to his right," and then "intentionally swerv[ed] into Plaintiff at a high rate of speed, immediately ejecting Plaintiff from his motorcycle."  (*Id.* at ¶¶ 17-18, 22.)

Following these events, Halik was taken into custody and charged with felony vehicular eluding, as well as "other traffic offenses."  (*Id.* at ¶¶ 22, 30.)  Plaintiff now alleges that, upon his

---

[1] The EPSO deputy who is said to have initiated the traffic stop is not a party to this lawsuit.

apprehension, the "Deputies involved in the pursuit," including Sergeant Brown, intentionally "downplay[ed] the severity" of his injuries, by making certain "false" statements in their police reports regarding the pursuit, and by "accusing" him of "faking his injuries."  (*Id.* at ¶¶ 20-22.) In addition, Plaintiff complains that, shortly after his arrest, Sergeant Brown attempted to "unlawfully charge" him with another crime, despite "knowing that no probable cause existed to charge as such."  (*Id.* at ¶ 38.)

From August 20, 2017, until September 2, 2017, Plaintiff was held at the El Paso County Criminal Justice Center ["CJC"].  (*Id.* at ¶¶ 32-33.)  Plaintiff alleges that, prior to his confinement, certain "known and unknown" EPSO deputies "lied in order to secure a higher bond for [him] and unconstitutionally punish him and hold him in jail."  (*Id.* at 31.)  In addition, Plaintiff alleges that, while in CJC custody, he was "deprived of any meaningful medical care, despite his repeated requests to Deputies and other [CJC] staff."  (*Id.* at ¶¶ 32-33.)  Plaintiff likewise complains that he "was held in segregation" for "a large portion" of his confinement at CJC, and "largely ignored" by CJC officials.  (*Id.*)

In this lawsuit, Plaintiff also alleges, after his arrest, Deputy Carey, "alongside several other EPSO Deputies, known and unknown," waged "an extensive, relentless campaign of oppression, civil rights violations, and harassment" against him.  (*Id.* at ¶¶ 35, 39-41, 48-50.) Plaintiff alleges that, on August 20, 2017, Deputy Carey "knowingly lied" in a search warrant affidavit, "in an attempt to connect [him] to an unrelated incident."  (*Id.* at ¶¶ 35-36.)  In doing so, Deputy Carey reportedly "caused the Defendants' unlawful entry into Plaintiff's home, and caused the excessive pretrial confinement of Plaintiff."  (*Id.* at ¶ 36.)  Plaintiff, likewise, complains that, approximately eight and a half months later, on May 3, 2018, Deputy Carey

"went to [his] house in order to accuse him of a separate incident of vehicular eluding on a motorcycle." (*Id.* at ¶ 39.)  Finally, Plaintiff complains that, on May 7, 2018, "three EPSO Deputies arrived at [his] house in two marked EPSO patrol vehicles to [falsely] accuse him of yet another incident of vehicular eluding." (*Id.* at ¶ 40.)  Plaintiff claims that he was forced to seek emergency medical treatment for "severe emotional distress due to the EPSO Deputies continuing to harass him." (*Id.* at ¶ 41.)

Based on these allegations, on August 16, 2019, Plaintiff commenced this lawsuit, pursuant to 42 U.S.C. § 1983, asserting the following causes of action:

> All Defendants violated Plaintiff's right against excessive force and unreasonable search and seizure, as guaranteed by the Fourth Amendment to the U.S. Constitution.

> All Defendants violated Plaintiff's right to due process as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution.

> All Defendants showed deliberate indifference to Plaintiff's health and safety, among other violations, thereby violating Plaintiff's right against cruel and unusual punishment, as guaranteed by the Eighth Amendment to the U.S. Constitution.

> Defendants Brown, David, Elder, and El Paso County failed to train and supervise its or his employees.

> All Defendants failed to provide Plaintiff with adequate medical care.

> All Defendants were grossly negligent and demonstrated reckless or callous disregard of Plaintiff's rights, as well as intentional violations of state and federal law.

(*Id.* at ¶¶ 52-57.)  In his Complaint, Plaintiff seeks monetary damages, as well as declaratory, injunctive, and mandamus relief.  (*Id.* at 9.)

Defendants now move to dismiss the Complaint, in its entirety, pursuant to Federal Rules of Procedure 12(b)(4) and 12(b)(5), for inadequate process and service of process.  (Mot. 2-6.)

In addition, Defendants move to dismiss all claims against them, under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to plausibly allege that they violated his constitutional rights.[2]  (*Id.* at 8-20.)

## ANALYSIS

### I.  *Legal Standard for* **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers").  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*,

---

[2] Defendants also purportedly seek dismissal of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction.  (*See* Mot. 1, 6.)  In addition, the individual Defendants reference certain general principles of qualified immunity.  (*Id.* at 7-8.) However, aside from reciting the applicable legal standards, Defendants provide no argument for dismissal on either of those bases.  *See United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) ("The court will not consider . . . issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.").

927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. Motion to Dismiss for Inadequate Process and Service

Defendants argue, first, that the Complaint should be dismissed, in its entirety, pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5), for inadequate process and inadequate service of process. (Mot. 2-6.) "Rules 12(b)(4) and 12(b)(5) allow a defendant to defend against a claim on the grounds of insufficiency of process and insufficiency of service of process." *Whitsell v. United States*, 198 F.3d 260, 260 (10th Cir. 1999) (citation omitted). "A Rule 12(b)(4) motion constitutes an objection to the form of process or the content of the summons rather than the method of its delivery," while a motion made under Rule 12(b)(5) "challenges the mode or lack of delivery of a summons and complaint." *Gallan v. Bloom Business Jets, LLC*, --- F. Supp. 3d ----, 2020 WL 4904580, at *2 (D. Colo. 2020) (quoting *Oltremari by McDaniel v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994)). Proper service is a jurisdictional prerequisite to litigation. *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit[.]"). Without proper service, the court lacks personal jurisdiction over a defendant. *Okla. Radio Assocs. v. FDIC*, 969 F.2d 940, 943 (10th Cir. 1992).

In opposing a motion to dismiss under Rules 12(b)(4) and 12(b)(5), the "plaintiff bears the burden of making a prima facie case that he has satisfied statutory and due process requirements so as to permit the court to exercise personal jurisdiction over the defendant."

*Lopez v. Colorado*, No. 19-cv-00684-WJM-MEH, 2020 WL 2309558, at *19 (D. Colo. Jan. 7,

2020) (quoting *Allen v. United Props. & Const., Inc.*, No. 07-cv-00214-LTB-CBS, 2008 WL

4080035, at *9 (D. Colo. Sept. 3, 2008)).  In doing so, "the plaintiff must demonstrate that the

procedure employed by him to effect service satisfied the requirements of Rule 4 of the Federal

Rules of Civil Procedure."  *Gallan*, 2020 WL 4904580, at *2 (quoting *Sarnella v. Kuhns*, No. 17-

cv-02126-WYD-STV, 2018 WL 1444210, at *1 (D. Colo. Mar. 23, 2018)).  "The parties may

submit affidavits and other documentary evidence for the Court's consideration, and the plaintiff

is entitled to the benefit of any factual doubt."  *Lopez*, 2020 WL 2309558, at *19 (quoting *Fisher

v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)).  Importantly, "the court retains broad

discretion to extend the time for service even when the plaintiff has not shown good cause."

*Sarnella*, 2018 WL 1444210, at *1 (citing *Espinoza v. United States*, 52 F.3d 838, 840-41 (10th

Cir. 1995)); *see* Fed. R. Civ. P. 4(m).

  Here, Defendants do not appear to object to the form of process, or the content of the

summons.  Rather, Defendants take issue with the fact that Plaintiff did not effectuate service

upon them within the requisite time frame set out in Rule 4(m).  (*See* Mot. 4.)  Because

Defendants' challenge relates to the delivery of process, as opposed to its form, their motion to

dismiss under Rule 12(b)(4) is without merit.  *See* 5B Charles Alan Wright & Arthur R. Miller,

*Fed. Prac. & Proc. Civ.* 3d § 1353 (2008 Supp.) ("A Rule 12(b)(5) motion is the proper vehicle

for challenging the sufficiency of the service of process, *i.e.*, "the mode of delivery or lack of

delivery of the summons and complaint.").

  Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within

90 days after the complaint is filed, the court—on motion or on its own after notice to the

plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  Here, although Plaintiff filed his Complaint on August 16, 2019, service of process upon Defendants was neither obtained, nor attempted, by the Rule 4(m) deadline.  For that reason, on December 3, 2019, this court ordered Plaintiff to show good cause, in writing, as to why his claims should not be dismissed, pursuant to Rule 4(m), for lack of service.  (Doc. No. 4.)  On December 27, 2019, Plaintiff filed a timely response to the Order to Show Cause, in which he requested additional time to effectuate service.  (Doc. No. 6.)  Based on Plaintiff's response, on January 2, 2020, the court discharged the Order to Show Cause and extended the service deadline to January 27, 2020.  (Doc. No. 7.)  Shortly thereafter, on January 28, 2020, Plaintiff filed an executed Return of Service, indicating that service had been made upon all Defendants, on January 15, 2020.  (Doc. No. 8.)  Thus, service was, in fact, effectuated.  Moreover, service was timely.  *See Gebru v. Sear, Roebuck, & Co.*, No. 3:07-CV-2076-P, 2009 WL 10704400, at *2 (N.D. Tex. Jan. 14, 2009) (denying a Rule 12(b)(5) motion to dismiss for failure to timely serve process, where the plaintiff had ultimately complied with the court's order to show cause by filing a valid return of service).

On this record, then, Defendants have all been properly served.  Accordingly, Defendants' motion to dismiss under Rule 12(b)(5) is denied.

### III.  *Motion to Dismiss for Failure to State a Claim*

### A.  *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice.  *Tellabs, Inc*, 551 U.S. at 322; *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).  Publicly filed court records, including court transcripts, are subject to judicial notice.  *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).

## B.  *Official Capacity Claims*

Plaintiff brings official capacity claims against the El Paso County Sheriff, Defendant Bill Elder, and three subordinate EPSO officials—Defendants Brown, Carey, and David—in addition to his claims against El Paso County, itself.  "Suing individual defendants in their official capacities under § 1983 . . . is essentially another way of pleading an action against the county or municipality they represent."  *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010) (citation omitted).  There is "long-standing authority for the notion that individuals sued in their official capacities are redundant if the governmental entity for whom they work is also a defendant."  *Lyall v. City of Denver*, 319 F.R.D. 558, 569 (D. Colo. 2017); *see Bush for Estate of Garland v. Bowling*, No. 19-CV-98-GKF-FHM, 2020 WL 3271928, at *1 (N.D. Okla. June 17, 2020) ("[W]here a local governmental entity is sued along with an official of that entity in his or

her official capacity, the official capacity claims are subsumed within the claims against the government entity and, therefore, the official capacity claims against individual defendants are properly dismissed as redundant."); *see also Cox v. Glanz*, 800 F.3d 1231, 1254 (10th Cir. 2015) (observing that suit against a county sheriff, in his official capacity as county sheriff, is "equivalent" to suit against the county, itself). Here, Plaintiff's claims against Defendants Brown, Carey, David, and Elder, in their official capacities, are duplicative of the claims against El Paso County. As such, Plaintiff's claims against Defendants Brown, Carey, David, and Elder, in their official capacities, are dismissed. *See Hays v. Ellis*, 331 F. Supp. 2d 1303, 1306 n.2 (D. Colo. 2004) ("[T]he dismissal of the City of Boulder requires the dismissal of the defendant officers in this case named in their 'official capacities.'"); *see also Leadholm v. City of Commerce City*, No. 16-cv-02786-MEH, 2017 WL 1862313, at *5 (D. Colo. May 9, 2017) (dismissing "redundant" official capacity claims).

### C. Individual Capacity Claims

Plaintiff alleges that Defendants Brown, Carey, and David violated his Fourth Amendment rights to be free of unreasonable searches and seizures; that they deprived him of adequate medical care while he was in pre-trial custody, in violation of the Eighth Amendment; and that they also violated his due process rights under the Fifth and Fourteenth Amendments. (Compl. ¶¶ 52-55.) In addition, Plaintiff alleges that Defendants Brown and David, specifically, failed to adequately supervise and/or train their subordinates. (*Id.* at ¶ 55.) Defendants Brown, Carey, and David move to dismiss those claims against them, contending that Plaintiff has failed to adequately allege the elements of such claims, or their personal participation in any constitutional injury. (Mot. 8-19.)

### *1. Personal Participation*

Personal participation is an essential element of a civil rights claim.  *Brown v. Montoya*, 662 F.3d 1152 (10th Cir. 2011).  To establish personal participation, a plaintiff must show how the defendant caused the deprivation of a federal right.  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  In other words, an affirmative link must exist between the alleged constitutional violation and the defendant's participation, control, direction, or failure to supervise.  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151-52 (10th Cir. 2006).  Supervisory status, alone, is insufficient to support a § 1983 claim.  *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996); *see Brown*, 662 F.3d at 1163 ("Section 1983 does not authorize liability under a theory of respondeat superior.").  Further, "[t]o state a claim in federal court, a complaint must explain what each defendant did to [the plaintiff], when the defendant did it, how the defendant's actions harmed him []; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

### *a.  Claims against Defendant David*

In the Complaint, Plaintiff alleges that "Commander John P. David was a Lieutenant and directly supervised Defendant Brown at the time of this incident."  (Compl. ¶ 8.)  The only specific allegations regarding Commander David are that he "responded to the scene of the collision," and that he "subsequently participated in the extensive cover-up that ensued."  (*Id.* at ¶ 37.)

These allegations fail to show the requisite amount of personal involvement by Commander David to state a claim under § 1983.  Specifically, Plaintiff has not alleged that Commander David had any direct contact with him, that Commander David was present during

any alleged violation of his constitutional rights, or that Commander David was involved in any "group effort" that resulted in a constitutional violation.  *See Estate of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014) (finding personal liability under § 1983, where "all Defendants actively participated in a coordinated use of force on Mr. Booker: Deputy Grimes applied the carotid hold; Deputy Gomez helped handcuff Mr. Booker; Deputy Robinette handcuffed him and applied pressure to his back; Deputy Sharp applied the OPN; and Sergeant Rodriguez used the taser").  To the extent Plaintiff predicates his claims on Commander David's alleged participation in an "extensive cover-up," the Complaint is devoid of any specific allegations as to the nature of his involvement.  Nor has Plaintiff alleged any facts that suggest an affirmative link between Commander David's supervision and the conduct of any subordinate.  *See Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("[A] plaintiff must show an 'affirmative link' between the supervisor and the violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates.").  For instance, the Complaint does not allege that Commander David personally directed his subordinates to use force to effectuate Plaintiff's arrest, or to deny him with medical care, or to falsify police reports.  *See Dodds v. Richardson*, 614 F.3d 1185, 1212 (10th Cir. 2010) (concurrence) (discussing standards for supervisory liability).  Plaintiff has likewise failed to allege that Commander David acted with "deliberate indifference" to the conduct of his subordinates.  *See Serna*, 455 F.3d at 1151 ("Because mere negligence is not enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with deliberate indifference that a constitutional violation would occur.") (alterations omitted).  Finally, there are no allegations from which to infer that Commander David violated Plaintiff's

rights, because of any policy.  *See Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (observing that supervisory liability can be imposed "upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects" a plaintiff to constitutional rights deprivations) (alterations omitted).

In this case, Plaintiff's conclusory allegations show only a possible indirect involvement by Commander David, and fail to allege the necessary personal participation required for individual liability under § 1983.  As such, the individual capacity claims against Commander David are dismissed.

### b. *Other Allegations Lacking Personal Participation*

Plaintiff alleges that he "was deprived of any meaningful medical care" and "largely ignored" by "Deputies and other staff at the CJC;" that "Deputies with the EPSO, known and unknown, arranged it so that [he] would be held in jail on a $100,000 cash-only bond;" and that "three EPSO Deputies" went to his house and made "false accusations" against him.  (Compl. ¶¶ 31, 33, 40.)  To the extent Plaintiff claims any of these activities amount to constitutional violations, Plaintiff fails to specifically connect any named Defendant to these activities.  As such, the allegations are insufficient to establish the personal participation of any Defendant in a constitutional violation based on these allegations.  *See Williams v. Hininger*, No. CIV-19-231-C, 2019 WL 2440808, at *4 (W.D. Okla. May 14, 2019) (dismissing § 1983 claims against unidentified "nurses").

### 2. *Fourth Amendment Claims*

#### a. *Excessive Force and Unreasonable Seizure Associated with Collision*

Plaintiff alleges that Sergeant Brown and "other Deputies" violated his Fourth Amendment rights, by pursuing his motorcycle, deploying roadblocks, and then "willfully ramm[ing] into" him "at a high rate of speed in a nearly head-on collision."  (Compl. ¶¶ 26, 52.)

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be violated."  U.S. Const. amend IV.  The Fourth Amendment's protections encompass the right to be free from the use of excessive force in the course of an arrest.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *see Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) ("Any force used 'leading up to and including an arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures.").

To state any claim under the Fourth Amendment, a plaintiff must show both that a "seizure" occurred, and that the seizure was "unreasonable."  *Childress v. City of Arapahoe*, 210 F.3d 1154, 1156 (10th Cir. 2000) (quoting *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989)).  "A person is 'seized' only when, by means of physical force or show of authority, his freedom of movement is restrained."  *Brooks v. Gaenzle*, 614 F.3d 1213, 1220 (10th Cir. 2010) (quoting *United States v. Mendenhall*, 446 U.S. 544, 533 (1980) (alterations omitted); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.").  To constitute a "seizure," the detention or taking by the government must be "willful."  *Childress*, 210 F.3d at 1156 (quoting *Brower*, 489 U.S. at 596).  "[O]nly an *intentional* effort to stop a

fleeing suspect through physical contact with a police vehicle will be considered a seizure, subject to the Fourth Amendment's requirement for 'reasonableness.'" *Lindsey v. Hyler*, 918 F.3d 1109, 1114 (10th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 374 (2007)). "By contrast, 'no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him.'" *Id.* (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)); *see Brower*, 489 U.S. at 596-97 ("[A] Fourth Amendment seizure does not occur . . . whenever there is a governmentally caused and governmentally desired termination of an individual's freedom (the fleeing felon), but only when there is a governmental termination of freedom of movement through means intentionally applied.").

"Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks omitted). In evaluating whether a seizure is reasonable, "three, non-exclusive factors" are relevant: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (quoting *Graham*, 490 U.S. at 396). The court must analyze the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Reavis ex rel. Coale v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (quoting *Graham*, 490 U.S. at 396). "The

Fourth Amendment 'does not require police to use the least intrusive means in the course of a detention, only reasonable ones.'" *Lindsey*, 918 F.3d at 1113-14 (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 894 (10th Cir. 2009)).

Here, there is no question that Plaintiff was "seized" when Sergeant Brown's vehicle collided into his motorcycle. The Complaint explicitly alleges that Sergeant Brown "was aiming to collide with Plaintiff in a head-on collision;" that he "turned his Chevrolet Tahoe to his right . . . in order to strike Plaintiff;" and that he "then rammed into Plaintiff at a high rate of speed." (Compl. ¶¶ 17-18.) These allegations, taken as true, show that Sergeant Brown intentionally placed his vehicle in Plaintiff's pathway, thereby causing the crash. *See United States v. Roacho*, 434 F. Supp. 3d 953, 961-62 (D. Colo. 2020) (finding a seizure to have occurred, where the officer "intentionally pushed [the plaintiff's] vehicle onto the curb and disabled it"); *c.f. Bradford v. Currid*, No. CIV-15-606-R, 2016 WL 4705731, at *4 (W.D. Okla. June 10, 2016) (finding no Fourth Amendment "seizure" when an officer's vehicle collided with the plaintiff's vehicle during a high-speed pursuit, where the officer was "unexpectedly and unintentionally in the path of [the plaintiff's] vehicle").

Further, considering the relevant factors, the facts and circumstances alleged by Halik plausibly show that the amount of force used by Sergeant Brown was "unreasonable." First, as to the "severity of the crime at issue," the Complaint's allegations suggest that, at the time of the pursuit, Sergeant Brown was aware that Plaintiff had, at most, run a stop sign and evaded a traffic stop. (Compl. ¶¶ 11-12, 28-29.) Indeed, Plaintiff explicitly states that Sergeant Brown "knew that there were no other allegations of any other offense that would justify the pursuit or the level of force that he used." (*Id.* at ¶ 29.) Although Plaintiff was ultimately charged with

vehicular eluding, which is a class five felony under Colorado law, the allegations must be construed in Plaintiff's favor, and, as alleged, the crime does not appear to have been severe enough to justify the amount of force used. *See Herrera v. Bernalillo Cty. Bd. of Cty. Comm'rs*, 361 F. App'x 924, 928 (10th Cir. 2010) (observing, in the context of a Fourth Amendment excessive force analysis, that "resisting, evading, or obstructing an officer" is not a "severe" crime); *see also Sanchez v. Baker*, --- F. Supp. 3d ----, 2020 WL 2065530, at *4 (D.N.M. 2020) (finding the first factor to weigh in the plaintiff's favor, where the pursuing officer "knew only that [the plaintiff] had committed one or more non-violent misdemeanors"); *c.f. McCoy v. Meyers*, 887 F.3d 1034, 1049-50 (10th Cir. 2018) (finding the first factor to weigh against the plaintiff, where the pursuing officers "were advised before entering [the plaintiff's] motel room that he was armed and that he had two hostages"). Accordingly, the first factor weighs in Plaintiff's favor.

The second factor considers whether Halik posed "an immediate threat to the safety of the officers and others." *Graham*, 490 U.S. at 396. Here, the Complaint's allegations do not show that Plaintiff was armed, or that he was acting aggressive, or in any way confrontational, towards Sergeant Brown, or towards any other individual. *See Estate of Holmes v. Somers*, 387 F. Supp. 3d 1233, 1250 (D. Kan. 2019) (finding allegations failed to show an immediate safety threat posed by a fleeing suspect, where the suspect was unarmed, and he did not act "threatening or confrontational"); *c.f. Carabajal v. City of Cheyenne, Wyo.*, 847 F.3d 1203, 1209-10 (10th Cir. 2017) (finding no excessive force violation when an officer fired two shots at a fleeing suspect's vehicle, where the officer "warned [the suspect] not to start the car or he would shoot," and where the suspect's vehicle then "began advancing toward" the officer); *United States v. Roacho*,

434 F. Supp. 3d 953, 962 (D. Colo. 2020) (finding that an officer "was reasonable in fearing that [a fleeing suspect] posed an immediate threat to the safety of the officers and others," where the suspect had a "known criminal past," he had "already crashed into a law enforcement vehicle," and "he was suspected of carrying a large quantity of drugs").  Moreover, certain of Plaintiff's allegations, taken as true, suggest that the pursuing authorities were, in fact, the ones who jeopardized the safety of innocent bystanders.  (*See, e.g.,* Compl. ¶ 13 ("Defendant Brown knowingly used unsuspecting, occupied civilian vehicles as unwilling participants in the roadblock.")).  It is also relevant that Plaintiff was reportedly driving a motorcycle, while Sergeant Brown was pursuing him in a Chevrolet Tahoe.  (*Id.* at ¶¶ 10, 12.)  The court agrees that, if true, "the risk of serious injury or death to Plaintiff was magnified exponentially."  (*Id.* at ¶ 27.)  Thus, while Plaintiff's flight undoubtedly created a risk of harm to other individuals, it is reasonable to infer that Sergeant Brown should have known, at the time of the head-on collision, that the threat posed by Plaintiff was insufficient to necessitate the use of lethal force against him.  The second factor, therefore, weighs slightly in Plaintiff's favor.

Finally, the third factor addresses whether Plaintiff was actively resisting arrest or attempting to flee.  *See Graham*, 490 U.S. at 396.  The Tenth Circuit has made clear that "a suspect's initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018).  Further, the reasonableness of an officer's decision to use force should be evaluated "at the precise moment that [the officer] used force."  *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1315 (10th Cir. 2009).  Here, the Complaint alleges that Sergeant Brown "was aiming to collide with Plaintiff in a head-on collision;" that Plaintiff "attempted to avoid" Sergeant Brown "by turning to the left;" and that Sergeant Brown

then "turned his Chevrolet Tahoe to his right" and "rammed into Plaintiff." (Compl. ¶¶ 17-18.) While a close call, at this stage of the proceedings, these allegations can be fairly read to show that Plaintiff was not actively resisting arrest or attempting flight, at least in the moments before impact with Sergeant Brown's vehicle. Indeed, it would be plausible to infer from the Complaint's allegations that Plaintiff was simply trying to avoid a potentially life-threatening injury. *See Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) (finding that a plaintiff was not "actively resisting arrest" when he "begged" officers not to handcuff him in a certain manner, because "a reasonable jury could conclude he was not resisting arrest, but was only pleading to be handled and handcuffed in a fashion that did not exacerbate his injuries"). The third factor, thus, also weighs slightly in Plaintiff's favor.

Accordingly, after reviewing the factors, the court concludes that the Complaint's allegations support a finding that the crime at issue was not severe; that Plaintiff did not pose an immediate threat to other individuals; and that Plaintiff was not actively resisting arrest at the time that Sergeant Brown used force against him. Therefore, although discovery may prove otherwise, at this stage in the proceedings, Plaintiff has plausibly alleged a Fourth Amendment excessive force claim against Sergeant Brown arising from these events.[3]

---

[3] To the extent Plaintiff seeks redress for alleged misconduct that occurred during the pursuit, but prior to the collision, the Fourth Amendment does not apply. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991) (recognizing that a fleeing defendant is not seized, if he does not yield to a show of authority); *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998) (observing that no Fourth Amendment seizure would occur, where a "pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit"). Any such pre-seizure conduct is, instead, subject to Fourteenth Amendment scrutiny. *See Cty. of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (substantive due process analysis is appropriate in cases that involve excessive force, where a specific constitutional provision, such as the Fourth or Eighth Amendment, does not apply).

### b. *False Statements to Effectuate Arrest and Prosecution*

Plaintiff also attributes certain "false" and/or "decepti[ve]" statements, as well as "malicious[]" conduct, to Defendants Brown and Carey.  (Compl. ¶¶ 20-22, 35-36, 38-39.)  Fourth Amendment liability may arise "based on material misstatements or omissions in warrant-seeking affidavits, probable cause statements, and similar written submissions."  *Hinman v. Joyce*, 201 F. Supp. 3d 1283, 1294 (D. Colo. 2016) (citing *Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012)); *see Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996) ("It is a violation of the Fourth Amendment for an arrest warrant affiant to 'knowingly, or with reckless disregard for the truth,' include false statements in the affidavit.").  In addition, "a cause of action exists under § 1983 for malicious prosecution in violation of the Fourth Amendment."  *Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016).

Here, Plaintiff alleges that Sergeant Brown intentionally "understat[ed] the speed of the collision" in his arrest report, and "indicated in his report that Plaintiff was travelling in the 'middle of the road' on Platte Ave Service Rd, despite knowing that to be false."  (Compl. ¶¶ 20-22.)  In addition, Plaintiff alleges that, shortly after his arrest, on August 21, 2017, Sergeant Brown attempted to charge him with criminal mischief, even though he "knew that there was no probable cause to sustain this charge."  (*Id.* at ¶ 38.)  Plaintiff likewise alleges that "on or about August 20, 2017," Deputy Carey "knowingly lied" in a search warrant application, "in an attempt to connect [him] to an unrelated incident that had apparently occurred on the morning of August 19, 2017."  (*Id.* at ¶ 35.)  Finally, the Complaint alleges that, approximately eight and a half months after these events, on May 3, 2018, Deputy Carey "went to Plaintiff's house" and

made "false accusations" against him regarding "a separate incident of vehicular eluding on a motorcycle."  (*Id.* at ¶ 39.)

These allegations, even taken as true, do not show violations of the Fourth Amendment. First, although Plaintiff complains that Sergeant Brown sought to charge him with criminal mischief, he does not allege that he was ever, in fact, charged with that crime.  (*See id.* at ¶ 38.) Further, as to the allegations regarding Deputy Carey—that he lied in a search warrant application, and later made "false accusations"—the Complaint unequivocally states that Plaintiff was not subject to criminal charges in connection with either incident.  (*Id.* at ¶¶ 36, 39.) As such, no "seizure" is alleged to have occurred.  For that reason, the Fourth Amendment is not implicated.  *See Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007) (finding no Fourth Amendment liability, where the plaintiff "was never arrested, incarcerated, or otherwise placed under the direct physical control of the state").

Plaintiff also complains of the "intentional deception" found in Sergeant Brown's arrest report.  (Compl. ¶ 48.)  An arrest must be supported by probable cause to comply with the Fourth Amendment.  *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008).  "An officer has probable cause whenever he knows of reasonably trustworthy facts that would lead a prudent person to believe that the arrestee is committing—or has committed—a crime."  *Scott v. City of Albuquerque*, 711 F. App'x 871, 875 (10th Cir. 2017) (citing *Keylon*, 535 F.3d at 1216). "In the case of a Fourth Amendment claim of falsified evidence, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit."  *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004); *accord Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).

Here, the Complaint is devoid of a sufficient factual basis, from which to evaluate whether "the allegedly false statement [was] necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 171 (1978).  Indeed, Plaintiff has not even alleged that the information supplied by Sergeant Brown was necessary to the probable cause determination that supported his arrest.  Absent such allegations, Plaintiff has failed to state a Fourth Amendment claim arising out of Sergeant Brown's arrest report.  *See Estate of Redd v. Love*, 62 F. Supp. 3d 1268, 1274 (D. Utah 2014) (finding no plausibly alleged Fourth Amendment violation, arising out of a "false" warrant application, where the complaint "failed to mention the contents of the warrant or the contents of the warrant affidavit").

### 3.  Due Process Claims

Plaintiff also alleges claims for violations of his due process rights under both the Fifth and Fourteenth Amendments.  (Compl. ¶ 53.)  However, the Fifth Amendment's Due Process Clause is applicable to the federal government only, not to the individual states.  *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).  In this case, Plaintiff does not allege any facts implicating the federal government.  As such, the Fifth Amendment does not apply.  *Wilson v. City of Lafayette*, No. 07-cv-01844-EWN-KLM, 2008 WL 4197742, at *6 (D. Colo. Sept. 10, 2008) (dismissing Fifth Amendment due process claims, where the plaintiff averred no facts relating to the federal government).

The Fourteenth Amendment provides: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause encompasses two distinct forms of protection: (1) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (2)

substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons.  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citation omitted).  In his Complaint, Plaintiff appears to allege both procedural and substantive due process violations.  (*See* Compl. ¶¶ 47, 49, 53.)  The court, therefore, will address each argument in turn.

### a.  Substantive Due Process

"Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power."  *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citing *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078-80 (10th Cir. 2015)).  A substantive due process violation can be established by either: (1) "legislative acts that infringe on a fundamental right;" or (2) "official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience."  *Id.* (citation omitted). "To succeed on such a claim, an individual must demonstrate that the government deprived him of life, liberty, or property without due process of law."  *Id.* (citing *Browder*, 787 F.3d at 1078).

### i.  Defendant Brown

The Complaint challenges the conduct of Sergeant Brown, both during and after his pursuit and collision with Plaintiff.  Specifically, Plaintiff takes issue with Sergeant Brown's decision to initiate the pursuit, as well as his actions during the pursuit, including his decision to deploy roadblocks to try to disable Plaintiff's motorcycle.[4]  (*See* Compl. ¶¶ 22-23, 26-29.)

---

[4] Plaintiff also alleges that, upon his arrest, he was "denie[d] due process," when Sergeant Brown engaged in "intentional deception" by "[l]ying on police reports."  (Compl. ¶ 49.)  However, to the extent Plaintiff challenges the basis for his arrest, "no §1983 claim will arise from filing criminal charges without probable cause under the substantive due process protections of the Fourteenth Amendment."  *Becker v. Kroll*, 494 F.3d 904, 918 (10th Cir. 2007).

In evaluating police action, the court must "consider whether the challenged conduct bears a reasonable justification in the service of a legitimate governmental objective or if instead it might be 'characterized as arbitrary, or conscience-shocking." *Lindsey*, 918 F.3d at 1115-16 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)) (alterations omitted). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 1116 (quoting *Onyx Props., LLC v. Bd. of Cty. Comm'rs*, 838 F.3d 1039, 1048-49 (10th Cir. 2016)). "Challenged actions must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience-shocking." *Id.* (quoting *Onyx*, 838 F.3d at 1049) (alterations omitted). "Indeed, not even 'intentionally or recklessly causing injury through the abuse or misuse of government power is enough.'" *Id.* (quoting *Onyx*, 838 F.3d at 1049) (alterations omitted). Further, "[i]n the circumstances of a high-speed chase aimed at apprehending a suspected offender, where unforeseen circumstances demand an instant judgment on the part of an officer who feels the pulls of competing obligations, only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the shocks-the-conscience test." *Lewis*, 523 U.S. at 834 (1998); *see Green v. Post*, 574 F.3d 1294, 1297-98 (10th Cir. 2009) (observing that "deliberate indifference could be enough to shock the conscience").

Here, Sergeant Brown was said to have "overhead" the EPSO deputy who initiated the traffic stop "on his police radio," when he began pursuing Plaintiff's motorcycle. (Compl. ¶ 12.) At the time of the pursuit, Sergeant Brown was reportedly driving a Chevrolet Tahoe. (*Id.*) It is alleged that, during the pursuit, Sergeant Brown repeatedly drove his vehicle "against oncoming lanes of traffic," and "knowingly used unsuspecting, occupied civilian vehicles as unwilling participants in the roadblock." (*Id.* at ¶¶ 13-14, 16.) The Complaint likewise alleges that

Sergeant Brown "was aiming to collide with Plaintiff in a head-on collision," despite the fact that he "knew or should have known" that "the risk of serious injury or death to Plaintiff magnified exponentially due to Plaintiff being on a motorcycle." (*Id.* at ¶¶ 17, 23, 27.)

These allegations, taken as true, plausibly show that Sergeant Brown's actions were deliberately indifferent to such an extent, as to shock the conscience. *See Browder v. City of Albuquerque*, 787 F.3d 1076, 1083 (10th Cir. 2015) (observing that "a police officer *could* be liable under the Fourteenth Amendment for driving in a manner that exhibits a conscience-shocking deliberate indifference to the lives of those around him") (quotation marks omitted); *Estate of Saenz v. Bitterman*, No. 20-cv-00848-NRN, 2020 WL 4003647, at *5 (D. Colo. July 15, 2020) (finding a substantive due process violation to be plausibly alleged against a pursuing officer, where the officer reportedly "ran a stop sign, and did not take avoidance measures"). As such, Plaintiff has adequately stated a Fourteenth Amendment claim for a violation of his substantive due process rights.

### ii. Defendant Carey

Plaintiff also appears to allege that Deputy Carey violated his substantive due process rights, by attempting to implicate him in other crimes, for which he was never ultimately charged. (*See* Compl. ¶¶ 35-36, 39.) In the Tenth Circuit, "§ 1983 malicious prosecution claims may still be available pursuant to the Fourteenth Amendment's substantive due process rights in cases that do not involve a Fourth Amendment seizure." *Becker v. Kroll*, 494 F.3d 904, 922 (10th Cir. 2007) (citation and quotation marks omitted). But "[t]his standard is met in only the most extreme circumstances, typically involving some violation of physical liberty or personal physical integrity." *Id.* at 923; *see, e.g., Holland v. Harrington*, 268 F.3d 1179 (10th Cir. 2001)

(finding substantive due process violation when the police held children at gunpoint for an extensive period of time, even after the home had been secured); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003) (recognizing potential parental claim for substantive due process violation, where the government did not seek consent prior to performing blood tests and genital exams on minors).

The conduct alleged by Plaintiff here does not meet this rigorous standard.  While Deputy Carey's investigatory actions, taken as true, may have been overzealous, his alleged conduct does not show "affronts to personal autonomy," as is required to establish a substantive due process claim.  *See Becker*, 494 F.3d at 922-23 (finding no substantive due process claim, based on allegations that the defendants engaged in a "groundless investigation" of the plaintiff).

### b. Procedural Due Process

"Procedural due process ensures that individuals are entitled to certain procedural safeguards before a state can deprive them of life, liberty or property."  *Id.* at 918 n.8 (citation omitted).  "To set forth an actionable procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded."  *Ripley v. Wyo. Med. Ctr., Inc.*, 559 F.3d 1119, 1122 (10th Cir. 2009) (quoting *Stears v. Sheridan Cty. Mem'l Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007)).

In the Complaint, Plaintiff alleges that his "motorcycle, clothing, and other gear [] sustained significant damages in the collision."  (Compl. ¶ 46.)  Plaintiff further alleges that he "was deprived of his motorcycle and a significant amount of other property that was unlawfully seized from his home on or about August 20, 2017 until approximately April of 2018."  (*Id.* at ¶ 47.)  Although Plaintiff unquestionably has a property interest in his motorcycle, clothes, and

other personal items, he does not set forth specific federal, state, or constitutional procedural safeguards that Defendants allegedly violated.  *See Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 519-20 (10th Cir. 1998) (observing that procedural due process claim must set forth procedures due under law).  Absent allegations that Defendants violated applicable procedural safeguards, Plaintiff cannot state a claim for violation of his procedural due process rights.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (*pro se* plaintiff must allege sufficient facts to plausibly state a claim for relied; conclusory allegations without supporting factual averments are insufficient).

### 4.  Supervisory Liability Claims

Halik lodges a claim against Sergeant Brown for failure to train and/or supervise "his employees."  (Compl. ¶ 55.)  However, "[i]n order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution."  *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006).  Here, the Complaint does not plausibly allege any underlying constitutional violation occurred at the hands of an individual under Sergeant Brown's supervision.  As such, Plaintiff cannot establish supervisory liability under § 1983.  *See Reeves v. Churchich*, 484 F.3d 1244, 1261-62 (10th Cir. 2007) ("[B]ecause The Officer did not violate the Reeves' constitutional rights, no supervisory liability attaches to Churchich.").

### D.  Claims against El Paso County

Finally, Halik claims that El Paso County is liable for the alleged violations of his constitutional rights.  A county "may be held liable under [§ 1983] if the [county] itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such

deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).  But, under § 1983, county liability cannot be imposed "simply because [the county] employs a person who violated a plaintiff's federally protected rights." *Jenkins v. Woods*, 81 F.3d 988, 993 (10th Cir. 1996) (citing *Monell*, 436 U.S. at 694); *see Connick*, 563 U.S. at 60 ("[U]nder § 1983, local governments are responsible only for their own illegal acts.").  Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (quoting *Monell*, 436 U.S. at 694).

To establish county liability under § 1983, a plaintiff must show: (1) "the existence of a municipal policy or custom;" and (2) "that there is a direct causal link between the policy or custom and the injury alleged." *Jenkins*, 81 F.3d at 993 (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).  A "policy or custom" can take the form of "(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused." *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoelter v. Twin Peaks Charter*

*Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotation marks omitted).  Causation is established, if the challenged policy or practice is shown to be "closely related to the violation of the plaintiff's federally protected right."  *Schneider*, 717 F.3d at 770.  "This requirement is satisfied if the plaintiff shows that the [local government] was the 'moving force' behind the injury alleged."  *Id.* (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

Here, the Complaint does not allege any custom, policy, or practice that was the "moving force" behind the alleged deprivation of Plaintiff's constitutional rights.  Indeed, Plaintiff alleges that Defendants' actions were in direct contravention of "numerous [EPSO] policies and laws." (Compl. ¶ 26.)  Nor does Plaintiff identify any decision made by an individual who held final policymaking authority, or the ratification of subordinates' decisions by such an individual. Rather, the sole theory of § 1983 liability advanced by Halik is that El Paso County "failed to train and supervise" certain of its employees.  (Compl. ¶ 55.)

### 1.  Failure to Train

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, a county's § 1983 liability "is at its most tenuous where a claim turns on a failure to train."  *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985)).  To recover under a "failure to train" theory, Plaintiff must show that El Paso County was "deliberately indifferent" to the need for more or better training, such that the "failure to train reflects a 'deliberate' or 'conscious' choice."  *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  In other words, Plaintiff must show that El Paso County had "actual or constructive notice that its action or

failure to act [was] substantially certain to result in a constitutional violation, and it consciously or deliberately cho[se] to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted). "To satisfy the stringent deliberate indifference standard, 'a pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'" *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (quoting *Connick*, 563 U.S. at 62) (alterations omitted). Only in a "narrow range of circumstances" will deliberate indifference be found "without proof of a pre-existing pattern of violations." *Id.* at 1287-88 (quoting *Connick*, 563 U.S. at 63-64).

Here, the Complaint does not allege any "pre-existing pattern of violations." Nor does the Complaint allege that El Paso County failed to train Sergeant Brown, or any other EPSO official, on the appropriate use of force. Indeed, Sergeant Brown is alleged to have "intentionally violated numerous policies and laws" in his pursuit of Plaintiff. (Compl. ¶ 26.) As such, the allegations suggest a "conscious decision" by Sergeant Brown to use excessive force, which "does not present a 'difficult choice' that further training would prevent." *See Waller*, 932 F.3d at 1288. Accordingly, Plaintiff has failed to state a failure-to-train theory of county liability.

### 2. *Failure to Supervise*

In the Complaint, Plaintiff also asserts a failure-to-supervise theory of liability against El Paso County. (Compl. ¶ 55.) Plaintiff alleges, specifically, that "no reports were generated in order to review and evaluate the pursuit, its unlawful tactics, or use of force," and that "no disciplinary or corrective action has been taken against Defendant Brown or any of the other Deputies involved in the pursuit or subsequent unlawful activities." (*Id.* at ¶¶ 42-43.) However,

the Complaint alleges no facts from which to discern any *specific* supervisory deficiencies with respect to EPSO employees, or how Sergeant Brown's supervision was inadequate, or how his purportedly inadequate supervision caused Plaintiff's injury.  Without such allegations, Plaintiff cannot proceed on this theory of §1983 liability, either.  *See Waller*, 932 F.3d at 1289 (finding that a plaintiff failed to allege a failure-to-supervise theory of municipal liability, where the complaint merely "allege[d] in conclusory fashion that Denver knew or should have known that its employees were inadequately supervised").

Accordingly, it is

**ORDERED** that "Defendants' Motion to Dismiss Complaint (ECF No. 1) Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(4), 12(b)(5) and 12(b)(6)" (Doc. No. 11) is **GRANTED, in part, and DENIED, in part**.  Specifically, Plaintiff's claims against Defendants Brown, Carey, David, and Elder, in their official capacities, are **DISMISSED** as redundant of the claims against El Paso County.  Plaintiff's claims against Defendants Carey and David, in their individual capacities, are **DISMISSED** for failure to state a claim.  Plaintiff's claims against El Paso County are also **DISMISSED** for failure to state a claim.  Plaintiff's claims against Defendant Brown, in his individual capacity, for excessive force under the Fourth Amendment, and for substantive due process under the Fourteenth Amendment, **PROCEED**.  Plaintiff's remaining claims against Defendant Brown, in his individual capacity, are **DISMISSED** for failure to state a claim.  The motion is **DENIED** in all other respects.  **Defendants Carey, David, Elder, and El Paso County** are hereby **DISMISSED from this lawsuit**.  The case proceeds against

Defendant Brown alone, solely on Plaintiff's Fourth Amendment excessive force and Fourteenth Amendment substantive due process claims.

This 30th day of September, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge