IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02354-NYW

BRIAN HALIK,

 Plaintiff,

v.

STEVEN D. BROWN, Sergeant, El Paso County Sheriff's Office, in his individual capacity,

 Defendant.

---

## ORDER

Magistrate Judge Nina Y. Wang

 This matter is before the court on "Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56."  (["Motion"], Doc. No. 44.)  Plaintiff has responded in opposition to the Motion, and Defendant has replied.  (["Response"], Doc. No. 46; ["Reply"], Doc. No. 47.)  For the following reasons, the Motion is **GRANTED**, and this case is **DISMISSED**.

## STATEMENT OF THE CASE

 *Pro se* Plaintiff Brian Halik ["Mr. Halik," or "Plaintiff"], brings this action under 42 U.S.C. § 1983, asserting violations of his Fourth and Fourteenth Amendment rights by an El Paso County Sheriff's Office ["EPSO"] sergeant, Defendant Steven D. Brown ["Sergeant Brown," or "Defendant"].  (["Complaint"], Doc. No. 1.)

### I. *Material Undisputed Facts*

On the evening of August 19, 2017, non-party EPSO Deputy DeHaan was "monitoring traffic" from his unmarked patrol vehicle, in the vicinity of Wooten Road and Greiger Boulevard in El Paso County, Colorado. (Doc. No. 44-5 at 2; Doc. No. 44-6 at ¶ 3.)  At 11:16 p.m., Deputy DeHaan observed a motorcyclist, later identified as Mr. Halik, fail to stop at a stop sign while travelling westbound on Geiger Boulevard. (*Id.*)  Deputy DeHaan, in response, activated his patrol vehicle's overhead lights and sirens, and attempted to effect a traffic stop of Mr. Halik. (Doc. No. 44-5 at 2; Doc. No. 44-6 at ¶ 4.)  However, Mr. Halik did not yield to the deputy's command, and instead, continued travelling eastbound on Geiger Boulevard. (Doc. No. 44-5 at 2; Doc. No. 44-6 at ¶ 4.)  Deputy DeHaan then called out over the EPSO radio for assistance, reporting that he was in active pursuit of a suspect fleeing westbound on Platte Avenue towards Wooten Road. (Doc. No. 44-5 at 2-3; Doc. No. 44-6 at ¶¶ 5-7.)  Mr. Halik's speeds were observed to be in excess of sixty miles per hour. (Doc. No. 44-6 at ¶ 8.)  Non-party EPSO Deputy Lowry, who was driving a marked patrol vehicle, quickly joined Deputy DeHaan in his pursuit of Mr. Halik. (Doc. No. 44-5 at 5-6; Doc. No. 44-7 at ¶¶ 4-5.)  Both deputies had their overhead lights and sirens on as they chased the suspect. (Doc. No. 44-5 at 2, 5; Doc. No. 44-6 at ¶ 4; Doc. No. 44-7 at ¶ 5.)

Sergeant Brown, who was driving a marked EPSO Chevrolet Tahoe, responded to Deputy DeHaan's call as well, by positioning his vehicle in the middle of the intersection of Wooten Road and Platte Avenue with his vehicle's overhead lights and sirens activated. (Doc. No. 44-5 at 3; Doc. No. 44-8 at ¶¶ 4-6.)  Within a matter of minutes, Mr. Halik entered the intersection where Sergeant Brown was positioned, and momentarily stopped his motorcycle in

front of Sergeant Brown's Chevrolet Tahoe. (Doc. No. 44-5 at 3; Doc. No. 44-8 at ¶¶ 7, 9.) As Sergeant Brown exited his vehicle, Mr. Halik pushed his motorcycle back and then sped forward in between the Tahoe and another parked vehicle, proceeding south on Wooten Road. (*Id.*) Sergeant Brown concluded, based on his knowledge of the area, that Mr. Halik's only avenue of escape at that point would be via the adjacent Platte Frontage Road. (Doc. No. 44-5 at 3; Doc. No. 44-8 at ¶ 10.) Armed with that knowledge, Sergeant Brown reentered his vehicle and travelled west on Platte Avenue, driving through the median and onto the Platte Frontage Road at a speed of approximately twenty miles per hour. (*Id.*) Once on the Platte Frontage Road, Sergeant Brown observed Mr. Halik driving towards him from the opposite direction with Deputy DeHaan and Deputy Lowry in close pursuit. (Doc. No. 44-5 at 3; Doc. No. 44-8 at ¶ 11.) Sergeant Brown positioned his Chevrolet Tahoe in the center of the road, with its lights and sirens still on, so as to make himself visible to Mr. Halik. (Doc. No. 44-5 at 4; Doc. No. 44-8 at ¶ 11.) However, he was forced to reposition his vehicle to the left side of the road, so as to avoid a nearby parked car. (*Id.*) The record shows that Mr. Halik continued to approach Sergeant Brown, steering his motorcycle directly towards the Chevrolet Tahoe, which was at that point effectively stopped at a forty-five degree angle. (Doc. No. 44-5 at 4, 8; Doc. No. 44-8 at ¶¶ 11-12.) Mr. Halik's motorcycle, travelling at a speed of approximately five miles per hour, then impacted the Tahoe, striking the left front portion of the vehicle's bumper below the headlight. (Doc. No. 44-5 at 4; Doc. No. 44-6 at ¶ 9; Doc. No. 44-8 at ¶ 12.) At the time of the impact, there was sufficient space between the Tahoe and the curb to allow Mr. Halik to maneuver his motorcycle away from the Tahoe so as to avoid the collision, should he have wanted to do so. (Doc. No. 44-5 at 8.)

After impacting Sergeant Brown's patrol vehicle, Mr. Halik steered his motorcycle onto a nearby curb, approximately four to six feet from the Tahoe, where he had difficulty keeping the motorcycle balanced. (Doc. No. 44-5 at 3, 6-8; Doc. No. 44-6 at ¶ 9; Doc. No. 44-7 at ¶¶ 6-7; Doc. No. 44-8 at ¶¶ 13-14.) The motorcycle ultimately tipped over on its right side, partially on the roadway and partially on the curb, pinning Mr. Halik underneath. (*Id.*)

Deputy Lowry, who witnessed the collision, immediately exited her own patrol vehicle and approached Mr. Halik, observing a GoPro camera ["GoPro"] inside of his helmet that was recording. (Doc. No. 44-7 at ¶¶ 7-9.) Deputy Lowry seized the GoPro, which was subsequently logged into EPSO evidence under item number DWD 40. (*Id.* at ¶ 9; Doc. No. 44-9 at ¶ 6; Doc. No. 44-10.) The GoPro was eventually released from EPSO evidence to Mr. Halik, on April 18, 2018, upon verification of Mr. Halik's identity. (Doc. No. 44-9 at ¶¶ 5-7; Doc. No. 44-11.)

The record shows that Mr. Halik was charged with the following offenses arising from the August 19, 2017 vehicular pursuit: (1) vehicular eluding, pursuant to Colo. Rev. Stat. § 18-9-116.5, a class five felony; (2) reckless driving, pursuant to Colo. Rev. Stat. § 42-4-1401, a class two misdemeanor; (3) eluding a police officer, pursuant to Colo. Rev. Stat. § 42-4-1413, a class two misdemeanor; (4) failure to stop for a stop sign, pursuant to Colo. Rev. Stat. § 42-4-703(3), a class A traffic infraction; and (5) unregistered vehicle, pursuant to Colo. Rev. Stat. § 42-3-121(1)(a), a class B traffic infraction. (Doc. No. 44-12 at 1-3.) Mr. Halik ultimately pled guilty, on December 14, 2017, to one count of conspiracy to elude, pursuant to Colo. Rev. Stat. § 18-2-201(1), a class six felony. (*Id.* at 7-18.)

## II. Procedural History

Following these events, on August 16, 2019, Mr. Halik filed this § 1983 lawsuit against EPSO and numerous EPSO employees, including Sergeant Brown, asserting claims under the Fourth, Fifth, Eighth, and Fourteenth Amendments. (Doc. No. 1.) All of Mr. Halik's claims were subsequently dismissed as inadequately pleaded, aside from two claims made against Sergeant Brown: (1) a Fourth Amendment excessive force claim; and (2) a Fourteenth Amendment substantive due process claim. (Doc. No. 26.) Invoking the doctrine of qualified immunity, Sergeant Brown now moves for summary judgment on Mr. Halik's remaining claims. (Doc. No. 44.)

## STANDARDS OF REVIEW

### I. Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding the allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983); *see Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (stating that a court may not "supply

5

additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## II. The Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v.*

*U.S. Postal Serv.*, 812 F.2d 621, 623 (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

### III. Qualified Immunity

"Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset." *Washington v. Unified Gov't of Wyandotte Cnty., Kan.*, 847 F.3d 1192, 1197 (10th Cir. 2017) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001)). "The doctrine of qualified immunity protects government officials 'from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

"Motions for summary judgment based on qualified immunity are treated differently than other summary-judgment motions." *Farrell v. Montoya*, 878 F.3d 933, 936-37 (10th Cir. 2017); *accord Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Once a defendant has asserted a qualified immunity defense, the plaintiff must satisfy the "heavy two-part burden" of showing that: "(1) a reasonable jury could find facts supporting a violation of a constitutional right[;] and (2) the constitutional right was clearly established at the time of the defendant's conduct." *Farrell*, 878 F.3d at 937 (alterations and citations omitted). "The plaintiff must make this demonstration 'on the facts alleged.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). Moreover, "the plaintiff's factual recitation must find support in the record." *Id.* (citing *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)). However, the facts are still construed "in the light most favorable to the plaintiff as the non-movant." *Id.* (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina*, 252 F.3d at 1128 (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)). If, on the other hand, the plaintiff successfully establishes the

violation of a clearly established right, the burden then shifts to the defendant to prove "that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Id.* (quoting *Albright*, 51 F.3d at 1535).

## ANALYSIS

### I. Request for Relief under Rule 56(d)

As a preliminary matter, in his Response, Plaintiff argues that certain "documents and video(s)"—which he refuses to provide until Defendant "can properly overcome" his "objections" to certain discovery requests—"completely vitiate" the evidence within the summary judgment record. (Doc. No. 46 at ¶ 6.) Mr. Halik alleges that opposing counsel "has not provided" him with EPSO deputies' body worn camera ["bodycam"] video footage relating to the August 19, 2017 pursuit, and he claims that the GoPro video footage referenced in his complaint has since been "seized by other police officers" who have "conspir[ed] to cover up" Sergeant Brown's "misconduct." (*Id.* at ¶¶ 2, 4; *see* Doc. No. 1 at ¶¶ 19-20, 22; Doc. No. 44 at ¶ 29.) Plaintiff argues that Defendant's motion for summary judgment "should be denied or deferred," pursuant to Federal Rule of Civil Procedure 56(d), due to the fact that Plaintiff is "unable to present certain facts and evidence to entirely and properly justify" his opposition to the motion. (Doc. No. 46 at ¶ 8.)

Federal Rule of Civil Procedure 56(d) provides that the court may defer ruling on a motion for summary judgment and allow time to take additional discovery, if the non-moving party "shows by affidavit or declaration" that he "cannot present facts essential to justify [his] opposition." Fed. R. Civ. P. 56(d). "The declaration must specify '(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to

obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment.'" *Nat'l Union Fire Ins. Co. of Pittsburgh v. Dish Network, LLC*, 17 F.4th 22, 34 (10th Cir. 2021) (quoting *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1249 (10th Cir. 2015)). Where, as here, "the summary judgment motion is based on qualified immunity," the non-movant's Rule 56(d) declaration "must also 'demonstrate a connection between the information he would seek in discovery and the validity of the defendant's qualified immunity assertion.'" *Gutierrez v. Cobos*, 841 F.3d 895, 908 (10th Cir. 2016) (quoting *Lewis v. City of Fort Collins*, 903 F.2d 752, 754 (10th Cir. 1990)) (alteration omitted). A plaintiff cannot defer a motion for summary judgment "simply [by] stating that discovery is incomplete." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1310 (10th Cir. 2010) (quoting *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1179 (10th Cir. 2008)). Rather, a party seeking relief under Rule 56(d) "must state with specificity how the additional material will rebut the summary judgment motion.'" *Id.* (quoting *Garcia*, 533 F.3d at 1179). Thus, "it is insufficient for the party opposing the motion to merely assert that additional discovery is required to demonstrate a factual dispute or that evidence supporting a party's allegation is in the opposing party's hands." *Gutierrez*, 841 F.3d at 908 (quoting *Lewis*, 903 F.2d at 754); *see Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (making clear that "Rule 56(d) motions [should] be robust," and observing that a supporting affidavit's "lack of specificity" counsels against granting relief under Rule 56(d)).

Here, in support of his request for relief under Rule 56(d), Mr. Halik has attached a declaration, in which he states that he does not "currently have possession of the original GoPro video that is clear and convincing evidence of Defendant Brown's misconduct," and also that he

"ha[s] not received the conventionally submitted materials (ECF 45) from Defendant." (Doc. No. 46-3 at ¶ 2.) Mr. Halik declares that the GoPro video, in particular, "proves conclusively" that Sergeant Brown "crashed into" his motorcycle "intentionally and willfully." (*Id.* at ¶ 2(b).) Plaintiff further declares that he is "actively pursuing getting the original video back from Defendant Brown's coconspirators[.]" (*Id.*) Finally, Mr. Halik declares that he has not yet produced certain evidence relevant to his claims, because doing so would "unequivocally compromise" his "constitutional rights." (*Id.* at ¶ 2(a).)

       The declaration submitted by Mr. Halik fails to satisfy the specificity requirements of Rule 56(d). While Mr. Halik does identify the additional evidence that he seeks—*viz.*, the GoPro video footage—the declaration provides no details concerning the *specific* steps that Mr. Halik has thus far taken to obtain it. Nor does Mr. Halik provide the court with any explanation as to how additional time would enable him to do so, for purposes of rebutting the motion for summary judgment. Further, Mr. Halik does not address how the additional evidence relates to Sergeant Brown's invocation of qualified immunity, at all. *See Gutierrez*, 841 F.3d at 909 (affirming the denial of a Rule 56(d) motion, where the plaintiffs requested information that was "broadly relevant to the qualified immunity issue," but "did not explain *how* specific information was *essential* to their summary judgment opposition"). Although Mr. Halik is a *pro se* litigant, he must still comply with the same rules of procedure governing other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994); *see Mohn v. Progressive Ins.*, 802 F. App'x 391, 396 (10th Cir. 2020) (stating that a plaintiff's *pro se* status does not excuse his failure to comply with the requirements of Rule 56(d)). Accordingly, Plaintiff's request for relief under Rule 56(d) is denied. *See Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1250 (10th Cir. 2015) (affirming the

denial of a Rule 56(d) motion, due to the accompanying declaration's "lack of specificity"); *see also Oldershaw v. DaVita Healthcare Partners, Inc.*, No. 17-cv-00131-MSK-MJW, 2018 WL 3648059, at *11 (D. Colo. Aug. 1, 2018) (denying a *pro se* plaintiff's request for relief under Rule 56(d), where the plaintiff merely argued in her response brief that the defendant "refused to turn over critical evidence relating to" various subjects, "warranting denial of [the motion for summary judgment] pursuant to Fed. R. Civ. P. 56(d)"); *Campbell v. Singh*, No. 09-CV-01041-CMA-KLM, 2011 WL 4434945, at *3 (D. Colo. Sept. 23, 2011) (denying a plaintiff's request to defer summary judgment, where the plaintiff's supporting affidavit offered only "conclusory statements about incomplete discovery and broad allegations that Defendants destroyed his legal documents," failing to show "how the additional material or time w[ould] enable [the plaintiff] to rebut the summary judgment motion").

## II. The Excessive Force Claim

In his operative pleading, Mr. Halik alleges that Sergeant Brown used excessive force against him, in violation of his Fourth Amendment rights, when he "knowingly and intentionally" "rammed" his Chevrolet Tahoe "into" Mr. Halik's motorcycle "at a high rate of speed in a nearly head-on collision." (Doc. No. 1 at ¶¶ 17-18, 22-23, 52.) Sergeant Brown moves for summary judgment on this claim, arguing that Mr. Halik has failed to create a genuine issue of material fact on whether the collision constituted a seizure under the Fourth Amendment. (Doc. No. 44 at 6-9.) Defendant argues, in the alternative, that the summary judgment evidence unequivocally shows that any such seizure was reasonable, as a matter of law. (*Id.* at 9-11.)

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be violated." U.S. Const. amend IV.  The Fourth Amendment's protections encompass the right to be free from the use of excessive force in the course of an arrest.  *Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  To prevail on his Fourth Amendment claim, Mr. Halik must provide evidence to show both that a "seizure" occurred and that the seizure was "unreasonable." *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (citing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989)).

A person can be "seized" in either of two ways: (1) by "physical force;" or (2) by "a 'show of authority' that 'in some way restrain[s] the liberty' of the person." *Torres v. Madrid*, --- U.S. ----, 141 S. Ct. 989, 995, 209 L.Ed.2d 190 (2021) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)) (alterations in original); *see Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.").  A seizure by force requires "application of physical force to the body of a person with intent to restrain." *Torres*, 141 S. Ct. at 1003.  "Accidental force" does not suffice.  *Id.* at 998 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998)).  Thus, "only an *intentional* effort to stop a fleeing suspect through physical contact with a police vehicle will be considered a seizure, subject to the Fourth Amendment's requirement for 'reasonableness.'" *Lindsey v. Hyler*, 918 F.3d 1109, 1114 (10th Cir. 2019) (citing *Scott v. Harris*, 550 U.S. 372, 374 (2007)).  "By contrast, 'no Fourth Amendment seizure would take place where a pursuing police car sought to stop the suspect only by the show of authority represented by flashing lights and continuing pursuit, but accidentally stopped the suspect by crashing into him.'" *Id.* (quoting

*Lewis*, 523 U.S. at 844). "When an officer does not apply physical force to restrain a suspect, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submits to the assertion of authority.'" *United States v. Salazar*, 609 F.3d 1059, 1064 (10th Cir. 2010) (quoting *California v. Hodari D.*, 499 U.S. 621, 625-26 (1991)); *Torres*, 141 S. Ct. at 1001 ("Unlike a seizure by force, a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement.").

Here, Sergeant Brown argues that the collision between his Chevrolet Tahoe and Mr. Halik's motorcycle did not constitute a Fourth Amendment seizure, because he was not "intentionally attempting to stop" Mr. Halik's motorcycle at the moment of impact. (Doc. No. 44 at 8.) Sergeant Brown insists that Mr. Halik was, in fact, the one "who chose to create the physical contact between the two vehicles." (*Id.* at 9.) In support of these contentions, Sergeant Brown has produced uncontroverted evidence showing that his Tahoe was effectively stopped when Mr. Halik steered his motorcycle directly into the Tahoe's front bumper. (Doc. No. 44-5 at 4; Doc. No. 44-8 at ¶ 12.) Defendant has also produced credible evidence showing that Mr. Halik was only travelling at a speed of five miles per hour at the moment of impact. (Doc. No. 44-6 at ¶ 9.) The uncontroverted police investigation report attached to Sergeant Brown's motion for summary judgment likewise shows that Mr. Halik had ample space to maneuver his motorcycle around the Tahoe to avoid the collision. (Doc. No. 44-5 at 8.)

In his Response, Mr. Halik complains that opposing counsel has withheld evidence, made "overly broad" discovery requests, ignored his repeated attempts at conferral, intentionally "misle[d]" the court, and otherwise behaved in a manner that demonstrates "callous disregard" for Mr. Halik's "rights." (Doc. No. 46 at ¶¶ 2-5.) However, Plaintiff does not direct the court to

*any* evidence regarding the substance of his claims, or creating a genuine issue of material fact as to Defendant's assertions regarding the speed of Plaintiff's travel or the opportunity for Plaintiff to avoid a collision. *See Walters v. Wal-Mart Stores, Inc.*, 703 F.3d 1167, 1173 (10th Cir. 2013) ("While [the court] liberally construe[s] [Plaintiff's] pro se filings, [it] will not assume the role of advocate and make his arguments for him.") (internal quotation marks omitted).  Indeed, Plaintiff does not address why the video that he believes will "completely vitiate [Defendant's] claims of qualified immunity" was not on the GoPro when it was returned to him.  (*Compare* Doc. No. 44-9 at ¶¶ 4-5 *with* Doc. No. 46-3 at ¶ 2(b).)  Here, Mr. Halik has not introduced any evidence to contradict Sergeant Brown's account of the position of his vehicle or Mr. Halik's opportunity to avoid such vehicle.  Nor does he offer any sworn testimony, either from himself or any witness, to contradict the evidence proffered by Sergeant Brown.  *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995) ("[U]nsupported allegations without any significant probative evidence tending to support the complaint" are insufficient to defeat summary judgment.) (internal quotation marks omitted).

Viewing the summary judgment evidence in the light most favorable to Mr. Halik, no reasonable fact finder could conclude that Sergeant Brown was intentionally attempting to stop Mr. Halik's motorcycle with his Chevrolet Tahoe when the two vehicles collided.  To the contrary, the uncontroverted record reflects that Sergeant Brown was seeking to avoid a collision with Mr. Halik.  Facing Sergeant Brown's invocation of qualified immunity, Mr. Halik has failed to adduce sufficient evidence that demonstrates a genuine issue of material fact that he was "seized" within the meaning of the Fourth Amendment.  Accordingly, Sergeant Brown is entitled to qualified immunity, and by extension, summary judgment on Mr. Halik's excessive

force claim. *See Farrell v. Montoya*, 878 F.3d 933, 939 (10th Cir. 2017) (holding that an officer was entitled to summary judgment on a Fourth Amendment excessive force claim arising from a high-speed chase, where there was no evidence showing that a seizure took place).[1]

## III. The Substantive Due Process Claim

Mr. Halik also alleges a violation of his Fourteenth Amendment substantive due process rights, arising from Sergeant Halik's decision to initiate the pursuit, as well as his actions during the pursuit, including his decision to deploy roadblocks to try to disable Mr. Halik's motorcycle. (Doc. No. 1 at ¶¶ 12-14, 16-17, 26-29, 53.) Mr. Halik complains that Sergeant Brown decided to pursue his motorcycle, while driving a Chevrolet Tahoe, even though he "knew" that Mr. Halik had only committed a "low-level traffic offense." (*Id.* at ¶¶ 12, 28-29.) Plaintiff alleges that, during the pursuit, Defendant repeatedly drove his vehicle "against oncoming lanes of traffic," and "knowingly used unsuspecting, occupied civilian vehicles as unwilling participants in the roadblock." (*Id.* at ¶¶ 13-14, 16.) Mr. Halik likewise alleges that Sergeant Brown "was aiming to collide with" him "in a head-on collision," despite the fact that Sergeant Brown "knew or should have known" that Mr. Halik's "risk of serious injury or death" was "magnified exponentially" due to the fact that he was riding a motorcycle. (*Id.* at ¶¶ 17, 23, 27.)

"Claims for 'substantive due process' find their basis in the Fourteenth Amendment's protections against arbitrary government power." *Lindsey v. Hyler*, 918 F.3d 1109, 1115 (10th Cir. 2019) (citing *Browder v. City of Albuquerque*, 787 F.3d 1076, 1078-80 (10th Cir. 2015)). A

---

[1] Having determined that Plaintiff has failed to adduce sufficient facts to establish a seizure, this court need not reach Defendant's arguments that the seizure was reasonable. (Doc. No. 44 at 9-10.) Nor does the court need to address the second prong of the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

substantive due process violation can be established by either: (1) "legislative acts that infringe on a fundamental right;" or (2) "official conduct that deprives a person of life, liberty, or property in a manner so arbitrary as to shock the judicial conscience." *Id.* (citation omitted). "To succeed on such a claim, an individual must demonstrate that the government deprived him of life, liberty, or property without due process of law." *Id.* (citing *Browder*, 787 F.3d at 1078).

In evaluating police action, the court must "consider whether the challenged conduct bears a reasonable justification in the service of a legitimate governmental objective or if instead it might be 'characterized as arbitrary, or conscience-shocking." *Lindsey*, 918 F.3d at 1115-16 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)) (alterations omitted). "Only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* at 1116 (quoting *Onyx Props., LLC v. Bd. of Cnty. Comm'rs*, 838 F.3d 1039, 1048-49 (10th Cir. 2016)). "Challenged actions must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience-shocking." *Id.* (quoting *Onyx*, 838 F.3d at 1049) (alterations omitted). "Indeed, not even 'intentionally or recklessly causing injury through the abuse or misuse of government power is enough.'" *Id.* (quoting *Onyx*, 838 F.3d at 1049) (alterations omitted). Further, "[i]n the circumstances of a high-speed chase aimed at apprehending a suspected offender, where unforeseen circumstances demand an instant judgment on the part of an officer who feels the pulls of competing obligations, only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the shocks-the-conscience test." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 834 (1998). "[H]igh-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the

Fourteenth Amendment[.]" *Id.* at 854; *see also Lindsey*, 918 F.3d at 1116 n.4 (observing that the same standard applies to "low-speed pursuits").

Sergeant Brown moves for summary judgment on Mr. Halik's Fourteenth Amendment claim, arguing that there is no evidence to demonstrate that he pursued Mr. Halik's motorcycle with the intent to cause Mr. Halik harm, unrelated to the "legitimate" objective "of his arrest." (Doc. No. 44 at 12.) In support of that contention, Defendant has submitted his own affidavit, in which he swears that he never harbored any intent "to injure or cause harm to" Mr. Halik. (Doc. No. 44-8 at ¶ 19.) Defendant also cites to credible evidence showing that, during the course of the vehicular pursuit, he took concerted actions to avoid causing injury to Plaintiff, as well as to protect innocent bystanders. (Doc. No. 44-5 at 4, 8; Doc. No. 44-8 at ¶¶ 11-12, 19.) Plaintiff, in response, makes no attempt to dispute Defendant's characterizations of this evidence. (*See generally* Doc. No. 46.) Nor does Plaintiff point to any other evidence regarding Defendant's intentions during his pursuit.

On this record, then, Plaintiff has failed to demonstrate the existence of a disputed issue of material fact as to whether Defendant intended to harm him, or otherwise violate his constitutional rights, during the August 19, 2017 vehicular pursuit. Therefore, Plaintiff has not met his burden to show that Defendant violated his Fourteenth Amendment rights, and Defendant is entitled to qualified immunity as to this claim, as well. *See Lindsey v. Hyler*, 918 F.3d 1109, 1116 (10th Cir. 2019) (affirming summary judgment and qualified immunity on a Fourteenth Amendment substantive due process claim, in favor of the pursuing law enforcement officer, where the undisputed evidence permitted no reasonable inference that the officer "intended any harm" to the plaintiffs).

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED THAT**:

(1) "Defendant's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56" (Doc. No. 44) is **GRANTED**;

(2) Summary judgment be **ENTERED** in favor of Defendant Steven D. Brown and against Plaintiff Brian Halik;

(3) As the prevailing party, costs shall be **AWARDED** to Defendant Brown, pursuant to Federal Rule of Civil Procedure 54(d);[2] and

(4) This case is **DISMISSED with prejudice**.

DATED:  March 7, 2022

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge

---

[2] Rule 54 creates a presumption that the district court will award the prevailing party costs. *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1190 (10th Cir. 2004).  This court finds no reason to diverge from that presumption in this action.